IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHISN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| | ) | Case No. 18-CR-629 |
| v. | ) | |
| | ) | Judge Kennelly |
| | ) | |
| ELIJAH MURPHY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO QUASH ARREST AND SUPPRESS GUN EVIDENCE, OR FOR THE SETTING OF AN EVIDENTIARY HEARING WITH REGARD TO THAT MOTION**

Defendant, Elijah Murphy ("Mr. Murphy"), by and through his undersigned counsel, respectfully moves this Court for the entry of an Order quashing his arrest and suppressing the gun evidence which was unlawfully seized, and states as follows:

**Procedural Background**

1. Mr. Murphy has been charged as a felon in possession of gun in violation of 18 U.S.C., section 922 (g)(1).

2. That alleged offense arises out of the Evanston Police Department's ("CPD") arrest of Mr. Murphy on state law charges.

**Facts**

3. The facts arising out of Mr. Murphy's arrest, including the circumstances surrounding the search of the vehicle at issue, are set forth in the attached Affidavit of Mr. Murphy. *See* Murphy Affidavit, submitted as an Exhibit herewith. However, they are also set forth herein for convenience.

4. Prior to his arrest, Mr. Murphy was with several of his friends. *Id.* They dropped Mr. Murphy off in a parking lot in Evanston, Illinois ("the parking lot"), where Murphy had agreed to meet his girlfriend, China.

5. Murphy was meeting China in order to follow her to the south side in a light-colored rental car that was rented under the name of China's mother; the rental car was parked in the parking lot before he arrived. *Id.*

6. China would be driving her own car, a dark colored Dodge Avenger ("the Dodge"), and Mr. Murphy would be following her to the south side in the rental car. *Id.*

7. Murphy met China in the parking lot and she handed him the keys to that rental car. *Id.*

8. Murphy got in the rental car. *Id.* When he did so, he was *not*: a.) carrying any bags; b) in possession of any guns on his person; c.) smoking any marijuana; d) in possession of any marijuana on his person. *Id.*

9. There was a bag on the floor of the rental car that the officers claimed contained a firearm. *Id.* The bag, which was partially concealed, did *not* belong to Mr. Murphy.

10. China began to drive across and out of the parking lot in her car; however, a marked squad car began pursuing *her*. *Id.*

11. Mr. Murphy later learned – after his arrest – that the Evanston police arrested China at that time. *Id.*

12. Mr. Murphy did not follow China out of the parking lot because he saw the police pursuit. *Id.* Instead, Murphy remained in the parked rental car and called a friend. *Id.*

13. As Murphy was sitting in the car, he did not have any of the interior lights on in the car. *Id.*

14. At no point was there any stench of marijuana in or near the parked car. *Id.*

15. After finishing his call, Mr. Murphy got out of the rental car, at which point the Evanston police officers, who were fifteen or so feet away, got out of their car. *Id.*

16. Mr. Murphy locked the parked car with the key/key device and walked towards and then past the Evanston police officers. *Id.*

17. As Mr. Murphy did so, he realized that he must have dropped the key for the rental car and so he walked back towards the officers and said something like, "did I just drop my key?" *Id.*

18. The Evanston Officers then told Mr. Murphy that they needed to search him. *Id.*

19. Mr. Murphy did not consent to the search of his person. *Id.*

20. Mr. Murphy provided them with his name and other information, and he told them that he was on parole. *Id.*

21. The Officers asked Mr. Murphy if the parked car was his, and Mr. Murphy responded that the car was not his. *Id.*

22. One of the Officers used the key that Mr. Murphy had previously dropped to open the rental car. *Id.*

23. The Officers did *not* ask Mr. Murphy's permission prior to opening and searching the parked car. *Id.* Murphy did *not* give the Officers permission to open or search the car. *Id.*

24. The officers arrested Mr. Murphy. *Id.*

25. Based upon the charging documents and the discovery in this case, the Officers recovered a gun – which the Government contends belonged to Mr. Murphy – during their search of the rental car.

26. The Officers contend that it was in the bag that was inside the rental car – which, the Government apparently concedes was *not* Mr. Murphy's bag.

27. Mr. Murphy could not and did not see the gun sticking out of that bag. Mr. Murphy does not believe anyone could see a gun sticking out of the bag as it was positioned on the floor of the rental car. *Id.*

28. In fact, Mr. Murphy learned following his arrest that the Evanston Police subsequently released the bag that purportedly contained the firearm to a woman. *Id.*

29. Moreover, in addition to that bag, the Officers recovered a number of items that were tied to or identified China, including China's job-related paperwork, etc.[1]

30. Based upon the discovery material produced to-date, it appears that at least one Officer will concede that the gun was *not* in plain view, and that is was not seen until the bag was moved by the Officer.

---

[1] However, the Government will point out that, apparently multiple fingerprints were recovered from the gun seized, including, according to the Government, that of Mr. Murphy as well as China.

31. The Evanston Police Officers did not have a warrant to arrest Mr. Murphy and did not have a warrant to search the parked rental car.

32. It appears that the Government/Officers will attempt to claim that they had probable cause to search the car because the Officers allegedly smelled marijuana from across the parking lot.  That is belied by the testimony of Mr. Murphy, defies logic, and is not corroborated by objective evidence.

### III.    Conclusion

33. Based upon the foregoing, probable cause did not exist to search the vehicle, and the gun recovered should therefore be suppressed.

**WHEREFORE**, Defendant, Mr. Murphy, by and through his undersigned CJA appointed panel counsel, Michael I. Leonard, respectfully moves this Court for the entry of an Order granting his Motion, or, in the alternative, setting this Motion for an evidentiary hearing and requiring the Government to produce all of the officers involved in the arrest of Mr. Murphy at that hearing, and for such other and further relief as is appropriate.

                                      **RESPECTFULLY SUBMITTED,**

                **By:**     **s/Michael I. Leonard**
                          **Counsel for Mr. Murphy**

**LEONARDMEYER, LLP**
Michael I. Leonard
120 North LaSalle – 20th Floor
Chicago, Illinois 60602
(312)380-6659 (direct)
(312)264-0671 (fax)
mleonard@leonardmeyerllp.com

## **CERTIFICATE OF SERVICE**

    The undersigned states that, on December 10, 2018, he caused the above document to be served upon opposing counsel of record by ECF filing it, and by way of e-mail.


                      **By:/s/ Michael I. Leonard**