IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 18 CR 629 |
| | ) | Judge Kennelly |
| ELIJAH MURPHY, | ) | |
| Defendant. | ) | |

**DEFENDANT ELIJAH MURPHY'S AFFIDAVIT IN SUPPORT OF MOTION TO QUASH ARREST AND SUPPRESS GUN EVIDENCE**

Defendant, Elijah Murphy, under penalties of perjury, deposes and states that he has personal knowledge of the following facts and, if called to testify, would testify competently and truthfully as follows:

1. On the date of my arrest, I was with several friends. They then dropped me off in the parking lot in Evanston, Illinois ("the parking lot") where I was ultimately arrested shortly thereafter.

2. They dropped me off at the parking lot because I had agreed to meet my girlfriend, China, at the parking lot. I was supposed to meet China at the parking lot in order to follow her to the south side in a rental car that was in her mother's name – and which was already present and parked in the parking lot before I was dropped off in the parking lot by my friends. The plan was for China to drive her own car, a dark colored Dodge Avenger ("the

1

Dodge"), and for me to follow her in that light-colored rental car, which was already parked in the parking lot before I was dropped off in the parking lot.

3. I met China in the parking lot and she handed me the keys to that rental car.

4. I got in the rental car. I was not carrying any bags or guns on my person as I got into the rental car. I was not smoking marijuana and I did not have any marijuana on my person as I got into the rental car.

5. There was a bag on the floor in the rental car. It was somewhat concealed. It was not my bag. In fact, I later learned from China - after my arrest in this case - that the Evanston [ESSENCE WEST.EM] police subsequently released that bag back to either China or another woman. I could not and did not see the gun sticking out of that bag, nor do I believe anyone could have seen a gun sticking out of the bag because of how the bag was positioned on the floor of the rental car.

6. China then began to start to drive across and out of the parking lot in the Dodge, and I was planning to follow her.

7. However, almost immediately, what I remember to be a marked squad car began pursuing her. I later learned - after my arrest - that the Evanston police arrested China at that time.

8. Because of the police pursuit of China, I did not follow her out of the parking lot. I remained in the car, and did not move it or drive it.

9. I called a friend of mine as I was sitting in the car. As I was sitting in the car, I did not have any of the interior lights on. As I was sitting in the car I was not smoking marijuana.

10. I then got out of the car, and closed the door and locked it with the key/key device.

11. There was no stench of marijuana in or near the car.

2

12. As I got out of the car, the Evanston police officers, who were fifteen or so feet away from the rental car, got out of their car.

13. I walked towards them and past them.

14. As I did so, I realized that I was no longer holding the car key, and that I must have dropped it. So, I walked back towards them and said something like, "did I just drop my key?"

15. They then told me that they needed to search me real quick or words like that.

16. I provided them with my name and other information, and I told them that I was on parole.

17. They asked me if it was my car, and I told them that it was not. ~~

18. One of the officers picked up the key that I had dropped and used it to open the car.

19. The officers did not ask my permission prior to opening the car. I did not give the officers permission to open the car.

20. The officers then searched the car. They did not ask permission to search the car. I did not give them permission to search the car.

21. The officers arrested me.

**FURTHER AFFIANT SAYETH NOT.**

*I TOLD THEM IT WAS MY GIRLFRIENDS CAR. EM*

_____
**ELIJAH MURPHY**
Dated: December 10, 2018

3